IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HERMAN LEROY CARTER,** : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 20-CV-0843 |
| : | |
| **PRIMECARE, INC.**, *et al.*, : | |
| Defendants. : | |

**MEMORANDUM**

**TUCKER, J.**                                                                                             **OCTOBER 13, 2020**

Plaintiff Herman Leroy Carter, a pretrial detainee at the Chester County Prison, brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, against PrimeCare, Inc., the medical contractor at the prison, and K. Murphy, who is identified as a "supervisor." (*See* Compl. ECF No. 2 at 2.)[1] He seeks to proceed *in forma pauperis*. For the following reasons, the Court will grant Carter leave to proceed *in forma pauperis*, dismiss his Complaint, and give him an opportunity to file an amended complaint.

**I.     FACTUAL ALLEGATIONS**[2]

Carter underwent fasciotomy surgery on November 15, 2019. (*Id.* at 12.) Four days later, he was admitted to the Chester County Prison and housed on the medical unit. (*Id.*) At the time of his admission, Carter had a soft cast and stitches on his left leg from just below his knee to just above his ankle, and he required crutches to move around. (*Id.*) Carter alleges that he

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] The allegations are taken from Carter's Complaint and attached exhibits.

1

was instructed to keep his leg elevated due to swelling, but that he was only given a thin blanket for that purpose, which did not provide enough elevation for his leg. (*Id.*)

Carter alleges that, on November 24, 2019, while he was dehydrated, he was moved to a cell in the medical unit in which the ambient temperature was over 100 degrees. (*Id.*) On November 25, 2019, between 6:00 a.m. and 9:00 a.m., Carter let "the medical staff" know that he felt lightheaded and dizzy, and was told to move his cot "to the floor next to the door so that [he] could get some cool air through the cracks in the door." (*Id.*) That same day, between 6:00 a.m. and 9:00 a.m., Carter fell when he attempted to get up to use the bathroom. (*Id.*) He alleges that he was left on the floor and urinated on himself. (*Id.*) At 9:00 a.m., Carter was transferred to another cell in the medical unit with an inmate who was allegedly housed there because he was a threat to himself and others. (*Id.*)

Carter alleges that on January 6, 2020, he attended a physical therapy session and was provided instructions on strength exercises to assist with his recovery. (*Id.* at 13-14.) He contends that PrimeCare medical staff informed him that he would not have another visit and that they did not provide him with items to assist him in his recovery efforts, such as resistance bands or ice. (*Id.* at 14.)

On January 24, 2020, Carter was transferred to the general population. (*Id.*) At that time, he still required a cane to walk long distances. (*Id.*) He asserts that PrimeCare staff put him "at great risk to get hurt if someone were to become aggressive" because he would not be able to defend himself. (*Id.*)

Based on those allegations, Carter filed this civil action, pursuant to § 1983, against PrimeCare and Murphy. He claims that the Defendants were deliberately indifferent to his serious medical needs and that he has suffered "permanent damage in [his] left leg, left foot, and

damage to [his] left arm due to lack of treatment and delay of treatment." (*Id.* at 5.) Carter seeks $250,000 in damages and retraining of the medical staff. (*Id.*)

Carter attached exhibits to his Complaint showing that he filed an "Official Inmate Complaint Form" on December 10, 2019, about the events of November, specifically, the allegedly insufficient medical care he received upon intake, his placement in the hot cell, the circumstances under which he urinated on himself, and his placement in the medical department with an inmate who was a threat to himself and others. (*Id.* at 15-16.) In response, PrimeCare stated that, upon intake, Carter was housed in the medical unit for close monitoring and provided a blanket for his leg. (*Id.* at 18.) According to PrimeCare, Carter "was seen daily by a medical provider" until he was cleared on November 25, 2019, and was subsequently seen by providers on November 29, December 6, December 16, and January 7. (*Id.*) PrimeCare also responded that Carter was sent to his orthopedic surgeon for follow up on December 13, 2019 and attended a physical therapy appointment on January 6, 2020. (*Id.*) According to PrimeCare, the orthopedic surgeon "stated that [Carter] showed 'marked improvement' since last seen in the hospital," and the records from the physical therapy visit stated "no post-operative falls were reported by Mr. Carter," and that "he was not at risk for falling." (*Id.*) Prime Care records also showed that Carter was consistently receiving pain medication throughout his incarceration. (*Id.*)

In response to Carter's allegations about having fallen, Prime Care stated:

> The only fall referenced in Mr. Carter's medical chart is an instance where he was witnessed on camera by medical and security staff lowering himself to the ground and then saying that he fell. There was also a short period of time where the temperature was somewhat elevated in the medical department, but maintenance was notified and the situation was quickly rectified.

(*Id.*)  Carter's grievance was denied based on PrimeCare's response, and Carter appealed that grievance.

## II.     STANDARD OF REVIEW

The Court grants Carter leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.³  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice.  *Id.*  As Carter is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.    DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Carter primarily raises constitutional claims based on alleged deliberate indifference to his medical needs regarding the allegedly inadequate post-surgical care he received for his leg and

---

³ However, as Carter is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

when he fell.  He also may be alleging that he was housed in unconstitutional conditions in connection with his cell assignment and the conditions in his cell, at times.

The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees.  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005).  To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment.  *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).  "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).  "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind."  *Id.* (internal quotations and alterations omitted).

In that regard, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'"  *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017).  Courts should consider the totality of the circumstances in evaluating such a claim.  *Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.").  Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that "such considerations are peculiarly within the province and professional expertise of corrections officials . . . ."  *Stevenson*, 495 F.3d at 68 n.3.

To state a claim based on the failure to provide medical treatment, a detainee must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Hope v. Warden York Cty. Prison*, No. 20-1784, 2020 WL 5001785, at *12 (3d Cir. Aug. 25, 2020). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). To establish a plausible deliberate indifference claim, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and then disregarded that risk." *Farmer*, 511 U.S. at 834. Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Importantly, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First*

*Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042 (2015). First, a supervisor may be liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id*. (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id*.

Further, a private corporation under contract to provide prison health services may be liable under § 1983 only if that entity's policies or customs caused the alleged constitutional violation. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009).

The Complaint, as pled, does not state a claim against the named Defendants. Although Carter described what happened to him and alleges that he interacted with PrimeCare employees at times in relation to his medical care, he does not allege how Defendant Murphy was personally involved in any of the events giving rise to his claims. Nothing in the Complaint indicates that Murphy was aware of Carter's medical condition or the other conditions of which he complains, or that she played any role in the decisions related to his care or the conditions at issue. For these reasons, Carter has not stated a claim against Defendant Murphy.

Similarly, even assuming PrimeCare employees may have violated Carter's rights, Carter may not base PrimeCare's liability solely on the conduct of its employees. Rather, as noted

7

above, PrimeCare is only subject to liability in a § 1983 action if its policies or customs caused the constitutional violations in question. As Carter has not specified a PrimeCare policy or custom that caused the alleged deficiencies in his medical care or that caused the conditions of which he complains, he has not stated a plausible claim against PrimeCare.[4]

### IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Carter's Complaint for failure to state a plausible constitutional claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). However, as it is possible that Carter could allege facts to cure the defects in his claims, the Court will give Carter an opportunity to file an amended complaint in accordance with the Court's Order accompanying this Memorandum. An appropriate Order follows, which provides further instruction as to amendment.

BY THE COURT:

/s/Petrese B. Tucker

**PETRESE B. TUCKER, J.**

---

[4] It is not clear that Carter's allegations as to the lack of post-surgical care for his leg rise to the level of deliberate indifference as opposed to reflecting a disagreement with the care he received. The Court expresses no opinion on the veracity of the content of PrimeCare's response to Carter's grievance. However, if Carter in fact received the level of care discussed in PrimeCare's response to his grievance, it is not clear what aspect of this care was deficient and why it was deficient, especially if his orthopedic surgeon reported that he showed "marked improvement" at his post-surgical follow-up appointment. As to physical therapy, Carter does not allege that he cannot perform the exercises suggested for him, but states that he has not been provided with a band for assistance or ice (presumably for comfort after the therapy). He has not alleged facts showing that these items are medical necessities or that failure to provide them is reflective of deliberate indifference. If he files an amended complaint, Carter is reminded that to show deliberate indifference, he must allege facts showing that a Defendant consciously disregarded a serious risk to his health.